The next case today is Jose Ramon Rivera-Rivera et al. versus the Puerto Rico Electric Power Authority PREPA et al. appeal number 20-1797. Attorney Ramos, please introduce yourself for the record and proceed with your argument. Good morning, your honors. Guillermo Ramos Ruina. I will be arguing on behalf of all of the appellants. If I may proceed. Yes, please. Thank you. I believe your honors that I should start. In order to understand fully the issues on appeal, we need to have a clear sense of what the PREPA's employees retirement system is. And it is a private de facto trust that has been in existence and operation since 1945. It provides defined pension benefits to all former employees of PREPA that retire from the agency. It is managed and overseen by an eight-member board of trustees that is composed as follows. Four of the trustees are elected by PREPA's employees and four of the trustees are designated by PREPA's management. All decisions must be taken by a super members. The trustees take all the decisions with respect to the system which include, among others, issuing the financial statements and taking all according assumptions, decisions, and calculations that are used to determine the percentage of contributions that will be allocated to PREPA. The system is funded by both employee contributions and PREPA contributions and also from investment income that is derived by the investments that are also overseen by the board of trustees. The system is also a creditor of PREPA. As a matter of fact, it is one of the largest creditors of PREPA. Currently, PREPA has over $600 million in debt of current contributions and has an actuarial debt to the system of approximately $3,000 million. In that context, then-governor of Puerto Rico, Ricardo Rosselló, issued the executive order that is a subject of the proceedings in the court below, Executive Order 2018-12, which basically placed the retirement system in a sort of receivership, named the members of PREPA's governing body as the receivers in order for the receivers to take decisions pertaining to the issuance of the system's financial statements. As of 2017, there was an issue. According to PREPA, the board of trustees was taking too long to issue those financial statements. The PREPA had needed them with more expediency and didn't like the time that the board of trustees was taking to issue them and then the governor stepped in and issued an executive order. Mr. Ramos, your time is going to be running on you. What is it you wanted the court to do? We wanted the court to issue two rulings, your honor, that the executive order was null and void because the governor of Puerto Rico has no authority whatsoever to issue orders over a private trust. The law is very clear. We have cited in our can only be issued to government bodies of the executive branch. How would that benefit you if the court announced today this executive order, which is no longer in effect, is null and void or was null and void? Well, because during the time that the executive order was in effect, the governing body of the board of trustees and the second ruling that we wanted from the court to issue was that all decisions taken by the governing bodies as receivers of the system during the time that the executive order was in place are also null and void. You're being rather abstract. Let me try to be more concrete. Suppose tomorrow the court gave you the order that you're asking for. Tell me how your client would be in a different position tomorrow after that order issued than it is today. Well, for one, the financial statements for 2017 that were issued while the executive order was in place would no longer be in place, so it would be incumbent upon the board of trustees to issue that financial statement. Also, during the time that the made or changed several of the assumptions or actual assumptions that have a bearing on the actual debt that PREPA has over the system. So if those decisions and those assumptions that were illegally made by the governing body of PREPA are null and void, then it is incumbent upon the board of trustees to issue those, make those assumptions, and it would have a concrete effect on the actual debt that PREPA has towards the system. So there's a concrete remedy that will have a concrete effect over the system and the debt that PREPA has towards the system. And what keeps the current board from restating its financials? It is, well, to the extent that they are claiming that the financials are valid, you know, there might be a question whether the board could do that because the board supposedly issued those financials. I mean, the system issued those financials when the governing body was illegally acting as the trustees of the system. I can't hear you, your judge. I was muted. If I understand it, your argument is that, at least as to the second order you're requesting, that was a declaratory judgment that certain discrete past actions that injured you are null and void? Yes. Our contention is that everything that the receivers did without authority to do so because they were acting on a legal order. But in your complaint, did you identify what any of those things were and how they injured you? No, your honor. The complaint... How can you meet the injury in fact aspect of it? Even if it's not moot, how is there an complaint identifying how any of those past actions injured you? Well, again, the allegations in the complaint are general. Yeah, that's my problem. So, how do you get around that problem? In other words, you're addressing the mootness problem by saying that you were seeking to have named past actions invalidated or declared illegal, and I could see how that might not be moot. But how were you injured by any of the past actions you're seeking the declaration for? If the complaint doesn't say anything about that, then how can there be a satisfaction of the standing requirement? Well, the complaint does allege that the trustees were stripped of their authority and their duties, and there was an illegal usurpation of their duties, and as a result of that, financial statements were issued. I would have to double-check, but it does have an allegation that everything that was acted during the time that the illegal order was in place is also not unvoid. And then there's also another, regarding mootness, your honor, we have also raised the probability that additional executive orders can be issued in the future. There's nothing to preclude another attempt on the current governor to issue other executive orders, because there's no ruling, as of now, that precludes them from doing so. And remember, PREPA is under the Title III proceedings. It's undergoing a major transformation currently. The operations of PREPA will be transferred next month to a private consortium that will take charge of all of the operations of PREPA, and that will have major implications over the retirement system. So there's nothing that precludes, right now, there's no judicial decision that holds our position to the effect that the governor cannot step in again, or try to step in again, and force or try to force the retirement system to do things that only the Board of Trustees is entitled to do. So, if there are no other questions, I will rest on the briefs. Thank you, Mr. Ramos. At this time, Mr. Ramos, you can please mute your audio and your video device, and Attorney Sushant, please unmute your audio and video. I apologize. I've unmuted my audio. I'm having trouble with my video. That's all right. You can proceed. There it is. So, please just reintroduce yourself on the record. My name is Bill Sushant, for Interested Party Afaf, on behalf of appellees, the Commonwealth of Puerto Rico, and PREPA. I'd like to start by addressing Judge Barron's question about the complaint and what relief it saw. The complaint did not identify any specific injury that had occurred to the appellants as a result of the executive order, and instead, it sought a blanket order that that's at Joint Appendix 368, quote, the full right to revoke, modify, in whole or in part, all decisions taken under the legal authority of the executive order, close quote. So, we have no idea what the actual practical concrete effect would be of the relief that the appellants seek. We do know that the audited financial statements and actuarial information were issued by the to PREPA's board as a result of the executive order. Is that in the complaint? That part is not in the complaint, Your Honor. That is in the record, and the information is... Is it relevant fact for purposes of the standing question that you're raising? Well, to finish my thought, Your Honor, that information was fully incorporated into PREPA's fiscal plan and budget. That fiscal plan and budget have each run their course and have been superseded by additional, by a new fiscal plan and a new budget. That happened in June of 2020, and so... That's an argument for mootness, but I'm back on standing. So, for purposes of... As I understand it, there's the challenge to the executive order itself, which there's a mootness argument because the executive order terminated. Then there's an argument about the actions taken during the period of time in which the executive order was in place, which would seem to get around the mootness problem, but runs into a standing problem. That's correct, Your Honor, and that is our position. With respect to the standing issue, are we on 12B-6? Or 12B-1? It would be 12B-1, Your Honor, I believe. So, for purposes of that, do we look anywhere beyond the complaint for figuring out whether the injury, in fact, was satisfied? You should not look anywhere beyond the complaint to determine whether the injury, in fact, was satisfied. And you're saying the financial statement point is not in the complaint itself? That is correct, Your Honor. It has nothing to do with the standing issue in the complaint itself. It does relate to the mootness inquiry, Your Honor. When it's a subject matter jurisdiction issue, don't we sometimes have fact-finding outside the complaint? Your Honor, you may, but in this instance, there were no facts to be found. There's nothing that's been submitted on the record in this case that deals with the specific things that the appellants are seeking to reverse here. They have mentioned it in their appellate brief, and they've said in their appellate brief, for the first time, they'd like to reverse the delivery of the financial statements. But even then... That was not released to the district court? That's correct, Your Honor. So it's only here for the first time on appeal. And even here on appeal, in their brief, their opening brief at page 21, they again reserved the right to, quote, modify in whole or in part all decisions taken under the executive order. And we have no idea what the effects of that could be. We don't know if they're going to try to whether they're going to attack the superseding 2020 fiscal plan and budget, whether they're going to seek to claw back payments that were made under the 2019 budget. We have no idea what the effect would be of the relief that they seek. Can you just, with respect to that, what kind of Article 3, what kind of objection is that? That's what I would like. Suppose someone had to write an opinion in this case, and they thought there's something to the point you're making. What is the point of that? Is that a redressability point? Is that a standing point? Is that a there's no declaratory judgment? The Act doesn't allow such a generalized... I just don't quite have that point. Your Honor, I believe it's a question both of mootness, because there is no remedy that can be given that would redress the harm that the appellants claim they have suffered. I also believe that it's a concreteness problem, because there's there's not a concrete dispute here that this court can resolve. It hasn't been presented with a vehicle to actually deal with the problem that the appellants were complaining of, and so I think you have problems there on both levels, Your Honor. Now, this case at bottom is a case of dilatory conduct by the appellants. It's both created this dispute and mooted this dispute. The appellants created the dispute by being dilatory in delivering financial statements to PREPA's board, as the appellants were required to under the Retirement Board's bylaws. There is no dispute that the 2016 financial statements and actuarial papers had not been sent to PREPA's board as was required by the bylaws, and so it was their own dilatory conduct that created the dispute. Once the governor stepped in and issued his executive order putting the PREPA board in charge for the limited purpose of delivering that information to PREPA's board, the filed their lawsuit right away, five days after the executive order was adopted, but then they did nothing to try to advance this case until August of 2019, at which point the executive order had already fulfilled its purpose and terminated by its own terms. The executive order terminated once the actuarial figures and financial statements had been delivered and the PREPA budget and fiscal plan had been certified, and all those things happened by June of 2019, so that by the time that the appellants got around to doing anything with this case, it had been mooted. They could have very easily gone into court and sought a temporary restraining order or a preliminary injunction, and they didn't do so. Five minutes remaining. They did so in this case was in the Commonwealth Court, but once it was removed, they never took any back to this point, which I'm getting confused by the way you're describing it. Aren't they seeking a declaratory judgment that actions taken during the time the executive order was in place are null and void? They are, Your Honor. To that aspect of the relief, there's no mootness problem, is there? Well, Your Honor, there is a mootness problem because the financial statements and actuarial numbers have been delivered. They now sit with the PREPA board as a completed act, and they've been incorporated into the budget and the fiscal plan. That's completed, and that fiscal plan and budget have been superseded, so it's unclear to me at least, and the appellants have never described what the effect would be if that relief were to be denied. If in fact, this court or the Title III court were to give them everything that they asked for, we don't know what the effect of that would be, so it's a concreteness problem that they cannot solve. They have not said, even here today before the court, what it is that would follow from the relief that they're asking for. Does that answer Your Honor's question? It may be just semantics, but I guess it's just the residue of whatever's left of their described about the financial statements having been issued and the incorporation to the budget. That would not seem to be moot, but it seems to me what you're saying is that there's just no dispute with respect to that because it's not concrete or there's no injury in fact or anything like that. That's correct, Your Honor, and that is what the Title III court found as well. So to go on, the appellant's dilatory conduct not only made the case moot, but also makes it such that none of the mootness exceptions apply. While one could accept for theoretical purposes that this is a case that could be repeated, it did not evade review because the appellants didn't take the steps they could have taken to obtain timely review. This is not a voluntary cessation case because the executive order terminated by its own terms, which had been set before the litigation commenced. And this isn't a collateral consequences case, as the appellants try to fit it into, because the collateral consequences doctrine is usually limited to criminal matters. And while some circuits have extended it to civil matters, they've only done so where there's an ongoing stigma arising from the dispute that has concrete effects on the injured party. For example, if someone is declared mentally incompetent and loses his right to vote or his right to sit on a jury, or an attorney is disbarred and has the continuing problem of now trying to attract clients even though the attorney's been reinstated. There is no stigma here on the board, the retirement board, and they haven't pointed to any concrete injury that they're suffering as a result of the actions that were taken under the executive order may have put the PREPA board in charge for a very limited purpose, but they haven't said how the financial statements were wrong, how the actuarial numbers are wrong, or how they've suffered any harm that can now be addressed by the court when the PREPA board is now out and the PREPA retirement system board is again fully in control of what's going on. So unless the court has any other questions, we'll rest on our papers for the remaining courts. Let me just ask one question which is sort of in left field I think, but would a beneficiary of the plan have a cause of action against the, up on the same, for the same reasons against the PREPA board? And I guess the reason for asking the question is, if it's possible, and I haven't thought this through, then might it be advisable to get a declaratory opinion about the validity of the actions having been taken? Your Honor, that's an interesting question which I hadn't considered until your honor just posed it. I would say that a beneficiary of the plan would not have a cause of action against the PREPA board or the governor or any of the other appellants at this stage of the game because no one is alleging that he or she has been deprived of a payment under the plan as a result of any of the conduct of the defendant. So even if a beneficiary... I'm assuming that kind of harm, at least theoretically, by adjustment of benefits up or down, and somebody gets the down while somebody else gets the up. So it's, you know, it's not a concrete scenario that I can give you, but I'm just I'm just wondering if there is an uncertainty about the liability of the auditing that shouldn't be solved so that confusion does not reign. Well, Your Honor, appellants have not alleged that there is any such uncertainty about the auditing. There's nothing in the record that suggests that any of this is possible, and at the end of the day, beneficiaries of the plan will get the payments to which they're entitled under the plan. No one has changed the benefits to which they're entitled under the plan. The only question becomes who has to put money into the plan to ensure that the plan can pay those benefits and make beneficiaries whole, and how much money that may be. And that's where the actuarial assumptions come in, but there's simply no allegation that anything has happened. There's nothing in the complaint, there's nothing in the record that anything has happened that's adversely affected the beneficiaries in any way. It's one related off-field question, which I'm sure there's a clear answer to, but the PROMESA stay has no relationship to this litigation? It does not, Your Honor. The PROMESA stay doesn't address these situations because this isn't a claim for money against any of the debtors. Okay, then without any further questions, we do rest on our papers and I thank the Court. Thank you. That concludes the argument in this case. Attorney Ramos and Attorney Sushant and Attorney Bolaños and Attorney Rappaport, you should